UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 22-0388 CJN |
| | ) | |
| WESTON SOBOTKA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Weston Sobotka, now 26 years old, is a generous, compassionate man who graduated from college and works in the field of construction management. Raised in Colorado, Mr. Sobotka



moved to Northern Virginia for work a few years ago. He went to the Capitol on the morning of January 6, 2021 from his home in Ashburn to attend the rally hosted by President Trump. Mr. Sobotka followed the crowd to the Capitol and entered the building through the Rotunda doors well after it had been breached. He was totally non-violent and did not damage any property. He did not push, insult, or harm any member of law enforcement, nor did he boast about his involvement or minimize his culpability or the seriousness of what happened on January 6 after the fact. Indeed, he accepted full responsibility and was respectful and forthcoming when FBI agents arrested and interviewed him. His decision to enter the building that day was a mistake he will always regret.

1

Mr. Sobotka is among the least culpable defendants being prosecuted for offenses committed on January 6. He entered a guilty plea quickly in this matter without filing motions or demanding a trial. His brief, non-violent entry into the Capitol building has already resulted in significant hardship to him. Most significantly, he was terminated from his job at a company in which he had been advancing and hoped to create a career for himself. The appropriate sentence for this Class B misdemeanor is 24 months of probation to include 50 hours of community service and $500 in restitution.

## PROCEDURAL HISTORY

Mr. Sobotka was arrested on August 23, 2022 when FBI agents approached and arrested him as he entered his home. He appeared in court the next day and was released on a personal recognizance bond. On January 9, 2023 Mr. Sobotka entered a guilty plea to one count of Parading, Demonstrating, and Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). Sentencing is scheduled for April 14, 2023 at 1:00 p.m. Because the offense of conviction is a Class B misdemeanor, the statutory maximum sentence is 6 months and the United States Sentencing Guidelines do not apply.

## APPLICATION OF THE SENTENCING FACTORS

Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), is a "petty offense," as defined by 18 U.S.C. § 3559(a)(7), because it carries a maximum incarceration period of six months or less. The United States Sentencing Guidelines (Guidelines) do not apply to class B misdemeanors. *See* U.S.S.G. §1B1.9. Because the Guidelines do not apply, the Court is directed to look to 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." The factors enumerated in 18 U.S.C. § 3553(a)(1) include "the nature and circumstances of the offense

and the history and characteristics of the defendant." Additionally, the Court should determine the "need" for the sentence, by considering if and how a term of incarceration would "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." *Id*. at (2)(A). Moreover, the Court should consider how a sentence would "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id*. at (2)(B-D). Further still, the Court must be mindful of "the kinds of sentences available," should consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and should consider the "need to provide restitution to any victims of the offense." *Id*. at (3), (6), & (7).

Honest application of the federal sentencing statute confirms that a sentence of probation to include community service is sufficient but no greater than necessary to meet the goals of sentencing. What follows is a detailed review of the relevant §3553(a) factors.

**I.      Mr. Sobotka's History and Characteristics**

Weston Sobotka was born in California and raised in Colorado Springs, Colorado. His father was a radiology manager and his mother was a nurse in the Air Force. He has an older brother and a younger sister, both of whom live in Colorado. During high school Mr. Sobotka worked busing tables at a Texas Roadhouse restaurant and was still on the principal's honor roll. After graduation he moved on to obtain a bachelors' degree in construction management from Colorado State University – Fort Collins. He was quickly hired by Holder Construction, where he worked in Nevada building data centers. Mr. Sobotka performed so well for the company, working 60 to 80 hour weeks, that they moved him across the country to Virginia to work on additional

3

projects the company was engaged in. His future at Holder appeared to be bright. He was asked to do a company-wide safety video and was getting to know leadership within the company. He was on his way to becoming a superintendent. However, when the company learned of Mr. Sobotka's presence at the Capitol on January 6 it terminated his employment.

Mr. Sobotka is resilient. He decided to stay in Virginia and sought employment in other fields while he applied for other jobs doing construction management. He worked as a salesman, store manager, and at a restaurant before he was hired by his current employer. For the last nine months Mr. Sobotka has worked as a project manager for TW Homes in Fairfax, Virginia. He enjoys the work and is enthusiastic about broadening his construction experience with TW Homes, which specializes in custom home building.

Mr. Sobotka has been a valued, compassionate, and loyal friend to countless people, including several who wrote letters of support on his behalf. Sam Bird met Mr. Sobotka in college at Colorado State. He writes of a remarkable incident in which Mr. Sobotka came to his assistance. In doing so, Mr. Sobotka was stabbed with a knife and was hospitalized as a result. Mr. Bird reports that despite this injury, which required emergency surgery, Mr. Sobotka forgave Mr. Bird immediately. Mr. Bird writes: "Personally, I don't know any other friend of mine (or person for that matter) that has exercised so much grace to anyone. Weston stared death in the face and came out the other side more magnanimous than I could ever fathom." Letter of Sam Bird, attached as Exhibit 2. Mr. Bird reports that Mr. Sobotka even went so far as to appear in court to advocate on Mr. Bird's behalf after the incident. Other friends recall stories that demonstrate Mr. Sobotka's character, including one friend who remembers Mr. Sobotka cutting a long bike trip short to help him bike ten miles back to camp after he broke his arm in a fall. Letter of Eric Hildenbrandt, attached at Exhibit 2.

Mr. Sobotka continues to seek ways to improve himself and his faith has been central to his growth in the last two years.  He attends church twice per week with his girlfriend's family.  Moreover, he recently gathered a group of friends into an Exodus 90 fellowship, which is a program for men focused on asceticism and prayer with the goal being to make each participant a better person and family member.  His friends report that his leadership in that group has been an inspiration.



Mr. Sobotka is in a very close relationship with his girlfriend.  His girlfriend's father, Ted Bjerke, reports that Mr. Sobotka has been a great addition to the family, enthusiastically taking part in family events and offering his assistance on tasks including helping to pack the family's belongings for a major move.  Letter of Ted Bjerke, attached as Exhibit 2. Mr. Sobotka's girlfriend Yasmine Bjerke writes that "[o]ne of the first characteristics I noticed in Weston was how caring he is to the people around him.  He is the type of person who watches and then acts. . . . He is always sharing his time with others, always there to offer an ear to whomever may need it and often sharing books with people he thinks might need the wisdom at the time."  Letter of Yasmine Bjerke, attached as Exhibit 2.

**II.     The Nature and Circumstances of the Offense**

Mr. Sobotka went to President Trump's rally at the Ellipse and then went with a large crowd to the Capitol. This Court is by now well aware of the words the President used at that rally encouraging his followers to go to the Capitol and to fight for him. Mr. Sobotka remained outside the Capitol and during that time did not engage in hostile or physical interactions with any member of law enforcement. He did not participate in seeking to breach any door to the Capitol. At approximately 3:02 p.m., well after the door had been breached by rioters, Mr. Sobotka entered the Capitol through the East Front door with a large crowd of people. He spent time in the Rotunda taking photographs and videos and speaking with a Capitol Police Officer before leaving the building at approximately 3:30 p.m.[1] At one point when Mr. Sobotka was inside the Rotunda he sent a photograph of himself to a friend captioned "I'm storming the Capitol haha". This message, sent in response to a text from his friend asking whether he was at work, was intended to be a joke but Mr. Sobotka of course recognizes that it was in poor taste. He was repeating language he heard and saw others using. In fact, Mr. Sobotka did not have any negative interactions with members of law enforcement on January 6, nor did he cause any damage to property or engage in any violence. He left the Capitol building willingly and without resistance.

Mr. Sobotka's conduct since his arrest has demonstrated his contrition and acceptance of responsibility. Mr. Sobotka sat for an interview with agents following his arrest and was completely honest and forthcoming about his conduct on January 6. He allowed agents to access the contents of his phone and never minimized the seriousness of his conduct. He acknowledges

---

[1] The photographs of Mr. Sobotka inside the Capitol in the government's sentencing memo at pages 3-5 depict him entering at the Rotunda door, inside the Rotunda, and in the area between the Rotunda door and the Rotunda itself.

6

his wrongdoing, has pled guilty to committing a crime, and is prepared to accept this Court's sentence.

### III. The Need to Reflect the Seriousness of the Offense and Provide Just Punishment

Given the consequences Mr. Sobotka has already endured due to his conduct, adding a jail term in this case would be overly harsh.

> People are all very quick to suggest that the only real punishment is a jail sentence, and it's just not true. People can suffer in many different ways and do suffer in many different ways a result of their conduct and that is something every judge, at least on this court, I believe, understands, and takes into account when they're fashioning the appropriate sentence.[2]

The defense here proposes a sentence to include probation, community service, and restitution to go along with these other consequences Mr. Sobotka has already endured. Adding additional jail time would be greater than necessary to reflect the seriousness of the offense and provide just punishment.

### IV. The Need to Avoid Unwarranted Disparities

This Court has imposed sentences of probation, community service, and restitution in several cases involving defendants whose conduct was as serious as - or more serious than - Mr. Sobotka's. For example:

***United States v. Thomas Gallagher, No. 21-0041 CJN***

Mr. Gallagher, a 32-year employee of the Department of Defense, traveled to Washington, D.C. from New Hampshire. Mr. Gallagher penetrated the Capitol all the way to the Capitol Visitor's Center. He was captured on video carrying a chair down a stairwell after rioters had thrown chairs at retreating officers. He then threw up his arms at a line of officers who had formed

---

[2] Quote from the Honorable Amit P. Mehta, *United States v. Andrew Cavanaugh*, 21-cr-362 (APM), Sentencing Transcript at p. 29.

a defensive line. Mr. Gallagher then approached the line of officers and ignored their admonition that he could not remain in the building. He was placed under arrest at that time. This Court imposed a sentence of 24 months' probation with 60 hours of community service.

### *United States v. Jonathan Sanders, No. 21-384 CJN*

Mr. Sanders, an Air Force veteran, traveled to the Capitol from Indiana. He saw rioters breaking out a window of the Capitol and saw confrontations between rioters and police including one in which a rioter pulled a shield from an officer. He then walked to another side of the Capitol and entered through the Central East doors. He walked around the Rotunda, to the Senate side of the Capitol, and then back into the Rotunda before exiting approximately 9 minutes after he entered. When he was interviewed by law enforcement, Mr. Sanders initially denied going inside the Capitol before admitting he had done so. He ended the interview by telling the officers that he "did nothing illegal." Mr. Sanders was sentenced by this Court to 36 months' probation and 60 hours of community service.

### *United States v. Jennifer Parks, No. 21-363 CJN*

Ms. Parks traveled to Washington, D.C. from Kansas. She took photographs of rioters, then entered the Capitol through broken doors. She walked up a circular staircase to the second floor and spent 15 minutes inside the Capitol. This Court sentenced Ms. Parks to 24 months of probation and 60 hours of community service.

Mr. Sobotka entered the Capitol but did not travel throughout the building, he did not challenge or threaten any member of law enforcement, he did not pick up or move any property within the Capitol building, and he did not deny responsibility when questioned. The less than 30 minutes he was inside the building were spent almost entirely in the Rotunda, during which time he took photos and videos using his phone. Mr. Sobotka's conduct was certainly no more serious

than those defendants this Court has sentenced to probation in the past. The sentence proposed by the defense thus avoids unwarranted sentencing disparities.

The comparators cited by the government in its sentencing memorandum involve defendants who engaged in more serious conduct than Mr. Sobotka. Diana Santos-Smith, sentenced by Judge Sullivan to 20 days' incarceration, jumped through a broken window two separate times to enter the Capitol. She could be seen laughing in a video when her co-defendant said:

> Diana and I are on our way out but look at the way out. It's crazy. [laughs] This is the part I don't like because you can't breathe, you can't see, and if someone comes and was to drop a bomb, we're dead, basically. I know, right? But we broke into the Capitol. We got inside. We did our part. We were looking for Nancy to shoot her in the frickin' brain. But we didn't find her.

*United States v. Santos-Smith*, No. 21-271-EGS, ECF No. 56. Blas Santillan, sentenced by Judge Pan to 45 days' incarceration, had prior convictions including statutory rape and willful obstruction of police officers. Mr. Santillan pushed past officers through the Rotunda Doors 20 minutes before Mr. Sobotka did. He paraded around the Rotunda shouting and raising his arms celebrating the riot. After he was forced out of the Capitol, Mr. Santillan remained outside the Rotunda doors shouting at rioters and encouraging them to enter the building, at one point yelling at them:

> It seems like you're that weak, because I'm the only one that was willing to do something! I'm the only one that was willing to kick that door! Who else is willing to storm in there? No one! . . . Who are you! Who are you! You're not America! You're not America! . . . Americans do not sit by while people take your rights! You are lazy Americans! That is what you are! You are used to sitting on your couch, and watching your Netflix, and listening to your shows, and watching YouTube! You do not know what freedom is. . . . Freedom is doing what you want! Freedom! Let's go! . . . Is this your house?

*United States v. Santillan*, No. 22-32-TJK, ECF No. 38. When interviewed by the FBI, he told them that he did not believe that officers had any issue with his unauthorized presence in the Capitol. *Id*. John Getsinger, sentenced by Judge Sullivan to 60 days' incarceration, entered through the Rotunda doors, but then went to the office of Congressman Kevin McCarthy, smoked

a joint and bragged about "smok[ing] a fatty inside the capital," promoted false information about Antifa assisting law enforcement, claimed he was pushed into the Capitol, and justified his actions by claiming that "we aren't heard any other way" and warned that "[i]t ain't over." *United States v. Getsinger*, No. 21-607-EGS, ECF No. 50.

**V.      Need for Deterrence**

Mr. Sobotka is genuinely remorseful for entering the Capitol on January 6 and there is no reason to believe he will ever reoffend. In his letter to the Court, he writes:

> I had no plan ahead of time to enter the building that day. I went to Washington D.C to peacefully protest. I wish I would have handled myself differently and not gotten engaged with the crowd. I regret my actions and part of me wishes I would have just gone home. However, I do believe that everything in life happens for a reason and I know that I can learn from what happened that day and the poor decisions I made. It's this reflecting and learning that allows us to grow as people and children of God. I do accept responsibility for my actions; I was there, was part of the crowd, I entered, and exited the building.

Letter of Weston Sobotka, attached as Exhibit 1. Mr. Sobotka's only other previous conviction was a misdemeanor driving under the influence charge. He takes this process very seriously and never wants to see the inside of a courtroom again. He will soon be married, will likely start a family, and he is developing a successful career. There is no reason whatsoever to believe that he will ever reoffend.

As for general deterrence, sentencing Mr. Sobotka to time in jail for entering the Capitol is not the salve that the country needs to ensure that January 6 was an isolated horror, particularly taking into account the consequences he has already faced for his conduct. Empirical evidence proves that the certainty of prosecution, rather than the severity of punishment is the greater deterrent.[3]

---

[3] *See* National Institute of Justice, *Five Things About Deterrence* (June 5, 2016), full article available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence

## CONCLUSION

For the foregoing reasons and such others as may be presented at the sentencing hearing, the defense respectfully requests that the Court impose a sentence of probation with community service and restitution.  Mr. Sobotka is a good man with a bright future who made a poor decision that does not define him. He recognizes that his conduct was wrong, has unequivocally accepted responsibility, and has already endured significant consequences.  Adding a jail term would result in a sentence that is greater than necessary to satisfy the goals of sentencing under 18 U.S.C. § 3553.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Ned Smock
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500
Ned_Smock@fd.org